# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VICTOR GONZALEZ,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-4880** |
| | : | |
| **CORRECTION OFFICER** | : | |
| **PRESCOTT,** *et al.* | : | |
| **Defendants.** | : | |

## MEMORANDUM

**YOUNGE, J.**                                          **NOVEMBER 24, 2025**

*Pro se* Plaintiff Victor Gonzalez, a prisoner currently incarcerated at SCI Fayette, has filed a Complaint asserting civil rights violations and state law tort claims. He also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Gonzalez leave to proceed *in forma pauperis* and permit him the option of filing an amended complaint or proceeding only on his individual capacity Eighth Amendment failure to protect and civil rights conspiracy claims against Correctional Officer Prescott.

## I.    FACTUAL ALLEGATIONS[1]

The events giving rise to Gonzalez's claim took place on the Restricted Housing Unit ("RHU") at SCI Phoenix ("SCIP"). (Compl. (ECF No. 1) at 13.) Gonzalez asserts that during out of cell time on the evening of June 9, 2024, he was escorted by correctional officers to a table where he was then handcuffed and shackled. (*Id.* ¶¶ 7-11.) Around that time, Gonzalez

---

[1] The factual allegations are taken from Gonzalez's Complaint (ECF No. 1). The Court adopts the sequential pagination assigned by the CM/ECF docketing system. Where appropriate, grammar, spelling, and punctuation errors in Gonzalez's pleading will be corrected for clarity.

observed Defendant Prescott speaking with an unnamed inmate near his cell "about U.S. currency." (*Id*. ¶ 12.)  The inmate handed Prescott his orange jumpsuit, which Prescott then handed back to him. (*Id*.)  Prescott took the inmate out of his cell and led him to the same table where Gonzalez was sitting, and handcuffed and shackled him immediately to Gonzalez's left. (*Id*. ¶¶ 12-13.)  Prescott then looked at Gonzalez and said, "You think I'm a game? I got something for you" and walked away. (*Id*. ¶ 13.)  A short time later, while Gonzalez was sitting quietly at the table watching TV, the other inmate sitting at the table stated, "He said he got something for you." (*Id*. ¶ 15.)  The inmate then pulled a large bag out of his jumpsuit, removed a shampoo bottle from the bag and sprayed Gonzalez in the face with an unknown substance and began assaulting Gonzalez. (*Id*. ¶¶ 15-16.)  Officers then came and took away the unnamed inmate and escorted Gonzalez to the medical ward for evaluation. (*Id*. ¶ 17.)  When Gonzalez passed Prescott on the way to the medical ward, Prescott said, "I told you," and smiled at Gonzalez. (*Id*. ¶ 18.)  After the attack, Gonzalez had trouble breathing out of his nose and had difficulty seeing out of his left eye. (*Id*. ¶ 19.)

On June 10, the day after the attack, the same unknown inmate harassed Gonzalez, urged him to kill himself, and told him that Prescott had paid him to assault Gonzalez. (*Id*. ¶ 21.)  On June 11, Gonzalez was "struggl[ing] with the effect of mental and emotional stress" caused by the June 9 attack and attempted suicide by taking "excessive medication." (*Id*. ¶ 22.)  He was subsequently placed under psychiatric and medical observation. (*Id*.)  In the months following the June 9 incident, Gonzalez filed multiple sick calls and requests to the medical department seeking further treatment for his left eye. (*Id*. ¶¶ 23-24.)  He either received no response to his requests or was told he would be seen but never actually received treatment. (*Id*. ¶ 24.)  Gonzalez contends that as a result he suffered irreparable injury to his left eye. (*Id*. ¶ 23.)

Based on these allegations, Gonzalez asserts claims against Prescott for failure to protect under the Eighth Amendment, civil rights conspiracy, and state law assault and battery. (*Id*. ¶¶ 26-27.) He asserts claims against the SCIP Medical Department for deliberate medical indifference under the Eighth Amendment and state law medical malpractice. (*Id*. ¶¶ 28-29.) As relief for his claims, Gonzalez seeks a declaratory judgment that the Defendants violated his rights, various forms of injunctive relief against the Defendants, and monetary damages.[2] (*Id*. at 19-20.)

## II.    STANDARD OF REVIEW

The Court grants Gonzalez leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

---

[2] Gonzalez's request for retrospective declaratory relief will be dismissed. Declaratory relief is unavailable to adjudicate past conduct, so Gonzalez's request for this declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

[3] Because Gonzalez is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Gonzalez is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

Gonzalez alleges both constitutional claims and state law tort claims. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A.    Official Capacity Claims

In drafting his Complaint, Gonzalez checked the boxes on the form he used indicating that he seeks to name Defendant Prescott in his individual and official capacities. (Compl. at 2.) He also asserts claims for injunctive relief, seeking: (1) to bar Prescott from working within 100

4

feet of where he is housed; and (2) to prevent him and any other SCIP employee from retaliating against him.  (Compl. at 19.)  The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against Commonwealth employees, like Prescott, acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, see 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as its officials sued in their official capacities, are immune from suits filed in federal court.  Accordingly, Gonzalez's official capacity claims seeking monetary damages against Prescott are dismissed with prejudice.

However, state officials may be sued in their official capacities where the plaintiff seeks prospective injunctive relief to stop an ongoing violation of federal law.  *See Ex parte Young,* 209 U.S. 123 (1908); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).  Courts reason that injunctions against state officials actively violating federal laws are "'necessary to vindicate the federal interest in assuring the supremacy of that law,'" despite the Constitution's prohibition against suits against the state.  *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).  In *Koslow*, the United States Court of Appeals for the Third Circuit held that because "the Eleventh Amendment has not been interpreted to bar a plaintiff's ability to seek prospective relief against state officials for violations of federal law," a plaintiff may sue a state official for ongoing violations of the Americans with Disabilities Act.  *Id.* at 178.

To avoid the bar of the Eleventh Amendment, however, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Pennhurst State Sch. & Hosp.,* 465 U.S. at 102*.* A plaintiff bringing such a claim "must show that they have sustained or are in immediate danger of sustaining some direct injury as the result of the challenged official conduct" that is real and immediate, as opposed to hypothetical or conjectural. *J. C. v. Ford*, 674 F. App'x 230, 232 (3d Cir. 2016) (*per curiam*) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (alteration in original) (citation omitted). Thus, under the *Ex Parte Young* doctrine, a plaintiff may bring claims against state officials in their official capacity when they commit an "ongoing violation of federal law." *Waterfront Comm'n of New York Harbor v. Governor of N.J.*, 961 F.3d 234, 238 (3d Cir. 2020); *see also Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011) ("[A] state employee may be sued in his official capacity only for prospective injunctive relief, because official-capacity actions for prospective relief are not treated as actions against the State." (internal quotation marks omitted)). Also, the *Ex Parte Young* exception does not apply when the state is the real party in interest, *i.e.*, if a judgment would "expend itself on the public treasury or domain, or interfere with public administration" or if a plaintiff seeks "specific performance of a State's contract." *Waterfront Comm'n*, 961 F.3d at 238-39 (internal quotations omitted).

A straightforward inquiry into Gonzalez's claims indicates that he does not allege an ongoing violation of federal law. He requests an order restricting Prescott from working within 100 feet of him and prohibiting him and any other SCIP employees from retaliating against him. (*Id*. at 19.) However, Gonzalez is currently incarcerated at SCI Fayette and does not allege that he is likely to be returned to SCIP where Prescott is employed, rendering any claim for injunctive relief against him or other SCIP employees moot. *See Fortes v. Harding*, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998) ("There is no indication of a reasonable likelihood that [plaintiff] will be returned to FCI-Allenwood in the foreseeable future. Consequently, his requests to enjoin the defendants from interfering with his [constitutional rights] is academic . . . In other words, [plaintiff's] transfer to another institution moots any claims for injunctive or declaratory relief."); *see also Weaver v. Wilcox*, 650 F.2d 22, 27 n.13 (3d Cir. 1981) (prisoner's transfer from prison mooted claim for injunctive and declaratory relief with respect to prison conditions, but not claim for damages); *Prater v. City of Philadelphia*, 542 F. App'x 135, 138 (3d Cir. 2013) ("[T]o the extent that Prater's complaint seeks prospective injunctive relief, the Sixth Amendment claim is moot, as Prater is no longer housed at CFCF."). Further, the events giving rise to Gonzalez's claims occurred more than a year ago and he does not allege any subsequent misconduct or threat of retaliation by any Commonwealth employee. The Court will therefore dismiss this claim for prospective injunctive relief and dismiss all official capacity claims.

### B.    Claims Against Correctional Officer Prescott

The Court concludes that Gonzalez's claims against Correctional Officer Prescott under the Eighth Amendment based on a failure to protect theory, and his civil rights conspiracy claim based on Prescott directing an inmate to commit assault and battery may be served for a responsive pleading. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 130-33 (3d Cir. 2001) (setting out

7

the law on a failure to protect theory); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (setting out elements of a civil rights conspiracy claim under § 1983). To the extent that Gonzalez also asserts a direct claim of assault and battery against Prescott, it is not plausible.

"Under Pennsylvania law, battery is defined as an intentional 'harmful or offensive contact with the person of another.'" *Martin-McFarlane v. City of Philadelphia*, 299 F. Supp. 3d 658, 670–71 (E.D. Pa. 2017) (citation omitted). An assault is "an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery." *Id*. "In other words, battery is an offensive touching without consent, and assault is an action that makes a victim believe that a battery is about to occur." *Id.* Gonzalez's assault and battery claims against Prescott are not plausible because he does not allege that Prescott committed unconsented physical contact with him nor that he put him in reasonable apprehension of such contact. Rather, Gonzalez alleges that Prescott directed another inmate to attack him and failed to protect Gonzalez from that attack. While this may assert a civil rights conspiracy to commit an assault and battery, it is insufficient to allege a direct claim of assault and battery. *See Martin-McFarlane*, 299 F. Supp. 3d at (dismissing assault and battery claims because plaintiff's "complaint is devoid of facts showing that Defendants touched Plaintiff or intended to put Plaintiff in reasonable apprehension of an immediate battery."); *see also Bellmon v. City of Philadelphia*, 895 F. Supp. 2d 659, 668 (E.D. Pa. 2012) ("Although § 1983 excessive force liability may attach based on acquiescence and failure to intervene . . . the Plaintiff points to no authority permitting assault and battery liability to attach under Pennsylvania law on the same basis.").

###    C.    Claims Against SCI Phoenix Medical Department

Gonzalez asserts constitutional and state law claims against the SCI Phoenix Medical Department based on their failure to provide follow-up treatment for his eye injury after the June 9 incident. For reasons discussed below, neither claim is plausible.

Gonzalez's Eighth Amendment claim against the SCI Phoenix Medical Department is not plausible because a medical department is not a person subject to liability under § 1983.[4] *See Amin v. SCI-Phoenix Med. Dep't*, 472 F. Supp. 3d 105, 110 (E.D. Pa. 2020) (dismissing claims against SCI Phoenix Medical Department because the department "is not a 'person' subject to

---

[4] To state a constitutional claim based on the failure to provide medical treatment against prison officials, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id.* (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'") (*per curiam*) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

suit under § 1983."); *see also Rivera v. Kirsh*, No. 20-2453, 2020 WL 4201624, at *2 (E.D. Pa.

July 22, 2020) ("Rivera's § 1983 claim against Defendant Berks County Jail System Medical

Department must be dismissed because a prison medical department is not a "person" subject to

suit under § 1983.").  To the extent Gonzalez can allege that a specific employee or employees

within the SCI Phoenix Medical Department were deliberately indifferent to his serious medical

needs under the standard set forth above, he may do so in an amended complaint.[5]

---

[5] The Court takes judicial notice that professional medical services at SCIP are provided under contract and not by Commonwealth employees. *See, e.g.*, *Perry v. Well-Path*, No. 20-2542, 2021 WL 229398, at *1 (E.D. Pa. Jan. 22, 2021); *Talbert v. Well Path*, No. 20-3401, 2020 WL 4815828, at *1 (E.D. Pa. Aug. 19, 2020).  Moreover, the SCIP Medical Department is not a "health care employee" within the meaning of the medical-professional liability exception in the Commonwealth's statute waiving sovereign immunity for professional malpractice claims, 42 Pa. Cons. Stat. § 8522(b)(2), a definition that is to be construed narrowly.  See *Robertson v. Port Auth. of Allegheny Cnty.*, 144 A.3d 980, 984 (Pa. Commw. Ct. 2016) (explaining that "[t]he exceptions to sovereign immunity in Section 8522(b) are to be interpreted narrowly, in accordance with the Legislature's intent to insulate the Commonwealth and its agencies from tort liability.").  Should Gonzales seek to reassert his medical malpractice claim against an actual medical provider, for that claim to be plausible he must allege: (1) the medical professional owed a duty to the patient; (2) the medical professional breached the duty; (3) the breach was the proximate cause of the harm suffered; and (4) the damages suffered were a direct result of the harm.  *Brown v. Hahnemann Univ. Hosp.*, 20 F. Supp. 3d 538, 542 (E.D. Pa. 2014) (citing *Hightower-Warren v. Silk*, 698 A.2d 52, 54 (Pa. 1997).  Pennsylvania Rules of Civil Procedure require a person asserting a medical malpractice claim to file a "certificate of merit" with respect to each defendant against which he asserts professional malpractice claim.  Rule 1042.3 of the Pennsylvania Rules of Civil Procedure requires an "attorney for the plaintiff, or the plaintiff if not represented" who brings an action based on "an allegation that a licensed professional deviated from an acceptable professional standard" to file a certificate of merit within sixty days of the filing of the complaint.  The United States Court of Appeals for the Third Circuit has held that this rule constitutes state substantive law and therefore applies in federal court as well.  *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 264-65 (3d Cir. 2011); *Nayak v. C.G.A. Law Firm*, 620 F. App'x 90, 94 (3d Cir. 2015).

The certificate must include one of the following statements: (1) that "an appropriate licensed professional" has supplied a written statement that there is a reasonable probability that the defendant's conduct fell outside acceptable professional standards; (2) that the claim against the defendant is based solely on allegations against other professionals for whom the defendant is responsible; or (3) that expert testimony is unnecessary for prosecution of the claim.  Pa. R. Civ. P. 1042.3(a).  The rule allows for a sixty-day extension of the period for filing a certificate of merit if such a request is made before the expiration of the deadline and good cause is shown. *See* Pa. R. Civ. P. 1042.3(d).

**IV.    CONCLUSION**

For the foregoing reasons, the Court will grant Gonzalez leave to proceed *in forma pauperis*, and dismiss the Complaint in part with prejudice and in part without prejudice. Gonzalez's official capacity claims seeking monetary damages against the Defendants, his state law assault and battery claim against Prescott, and his request for retrospective declaratory relief are dismissed with prejudice. Gonzalez's claims against the SCIP Medical Department are dismissed with prejudice since it is not a proper defendant. His deliberate indifference and medical malpractice claims are dismissed without prejudice with leave to amend to name a proper defendant. Gonzalez will be provided the option of filing an amended complaint or proceeding only on the claims that pass statutory screening, namely his Eighth Amendment failure to protect and civil rights conspiracy claims against Defendant Prescott. An order with additional instructions as to amendment will be filed separately.

**BY THE COURT:**

 /s/ *John Milton Younge*
**JOHN M. YOUNGE, J.**

11